# Exhibit 3

# OPUS2

Skatteforvaltningen v Solo Capital Partners LLP & Others

Day 26MT

June 12, 2024

Opus 2 - Official Court Reporters

Phone: 020 3008 6619
Email: transcripts@opus2.com
Website: https://www.opus2.com

|  |  |
|---|---|
| 1　　　　　　　　　Wednesday, 12 June 2024 | 1　　your first witness statement, please. The reference is |
| 2　(9.30 am) | 2　　{V/27/125} and I would like you to look in particular, |
| 3　　　　　　　　　Housekeeping | 3　　please, at paragraph 692 and this is where you deal with |
| 4　MR JUSTICE ANDREW BAKER: Good morning, Mr Shah. | 4　　your -- the financial relationship with |
| 5　　　　I don't know whether you can see on the screen, | 5　　Anupe Dhorajiwala. You see there that you confirm that |
| 6　　Mr Head is on his feet so it may be he wants to raise | 6　　you didn't enter into a profit share agreement with |
| 7　　something with me before we proceed any further. | 7　　Anupe relating to the Solo WHT scheme and you say that: |
| 8　　　　Mr Head, any difficulty about Mr Shah being with us | 8　　　　"After Raj left Solo, I offered to give Anupe the |
| 9　　while you are raising whatever it is you are going to | 9　　deal that Raj had been on (ie profit-sharing agreement |
| 10　　raise? | 10　　alongside me and Graham)." |
| 11　MR HEAD: No, on the contrary, my Lord, the reason I am on | 11　　　　Do you see that? |
| 12　　my feet is because we have one short and discrete | 12　A. Yes, I see that. |
| 13　　further point of cross-examination, subject to your | 13　Q. And in that witness statement at least there is no |
| 14　　lordship of course. The reason I raise it now and | 14　　suggestion that an agreement was concluded or that |
| 15　　didn't raise it previously is because it arises out of | 15　　payments were made. You would agree with that? |
| 16　　Mr Shah's fifth witness statement, the manuscript set of | 16　A. Yes. |
| 17　　amendments that he provided during the course of his | 17　Q. Let me next show you, please, what Mr Dhorajiwala says |
| 18　　evidence. I have discussed it with my learned friends, | 18　　about that. If we can go, please, to {Y17/34/41}. |
| 19　　there is no objection from anyone, so if it your | 19　　Page 41 of that document, please. This is |
| 20　　Lordship doesn't object I will just ask that | 20　　Mr Dhorajiwala's witness statement. Thank you. And if |
| 21　　additional -- | 21　　you could look, please, at paragraph 92 and in |
| 22　MR JUSTICE ANDREW BAKER: Let me just double-check. | 22　　particular starting from the fourth line, Mr Dhorajiwala |
| 23　　Mr Jones? | 23　　responds to an allegation that SKAT has made. Just |
| 24　MR JONES: My Lord, yes. The fifth witness statement arose | 24　　pausing there, I'm not going to go to it, but just for |
| 25　　from what my client said in cross-examination, it | 25　　your Lordship's note, that is an allegation that SKAT |
| 　　　　　　　　　　　　1 | 　　　　　　　　　　　　3 |
| 1　　doesn't seem to me that I can have any objection to this | 1　　makes at schedule 5 appended to the particulars of claim |
| 2　　at all. | 2　　which is at {B/44.1/5}. |
| 3　MR JUSTICE ANDREW BAKER: Mr Rabinowitz? | 3　　　　Responding to that allegation he says: |
| 4　MR RABINOWITZ: No objection, my Lord. | 4　　　　"I understand that SKAT has alleged that Sanjay and |
| 5　MR JUSTICE ANDREW BAKER: Thank you very much. | 5　　I agreed I would be entitled to at least 20% of the net |
| 6　　　　Mr Shah, I don't know whether you follow that | 6　　income earned by Ganymede from WHT applications at least |
| 7　　explanation, you will remember the process we went | 7　　from April 2013. This is not correct. We had |
| 8　　through which I slightly triggered that resulted in your | 8　　a discussion about this but no agreement was reached and |
| 9　　short manuscript fifth statement, so that therefore only | 9　　it was not something I pushed for at the time." |
| 10　　arose in effect as a supplement to your original | 10　　　　So you see what he says there? |
| 11　　evidence-in-chief during the course of your | 11　A. Yes, I see that. |
| 12　　cross-examination and Mr Head on behalf of the DWF | 12　Q. Then going now, please, to your fifth witness statement, |
| 13　　defendants has indicated he has just question or two or | 13　　the manuscript document that you produced during the |
| 14　　three to ask you arising out of that and I'm permitting | 14　　course of your oral evidence to the court, and that is |
| 15　　that to happen, all right. | 15　　at {V/39/2}, please. You are dealing with |
| 16　A. Thank you, my Lord. | 16　　paragraph 687, at the top of the page, of your original |
| 17　MR JUSTICE ANDREW BAKER: So there's a few questions from | 17　　witness statement. Again, I don't think we need to go |
| 18　　Mr Head before we get to your re-examination. Thank | 18　　to it, but that is a section which deals with various |
| 19　　you, Mr Head. | 19　　items of remuneration and you see in (iii) of that |
| 20　　　　　　MR SANJAY SHAH (continued) | 20　　manuscript note you say that: |
| 21　　　　　Further cross-examination by MR HEAD | 21　　　　"Anupe was paid 20% of Ganymede's profits from when |
| 22　MR HEAD: Thank you, my Lord. | 22　　Raj left until when he (Anupe) left Solo." |
| 23　　　　Good morning, Mr Shah. | 23　　　　So in your fifth witness statement you appear to go |
| 24　A. Good morning. | 24　　further or to give a slightly different account from |
| 25　Q. I will be very brief. Can I ask you firstly to look at | 25　　that in your first witness statement and you suggest |
| 　　　　　　　　　　　　2 | 　　　　　　　　　　　　4 |

1  correspondingly but not exactly matching as a matter of
2  arithmetic a loss on the futures hedge.
3  MR GOLDSMITH: Yes.
4  MR JUSTICE ANDREW BAKER: And because they don't correspond
5  exactly, there is then still at that point
6  a differential that is not exactly matched by the
7  combination of the net dividend figure and the various
8  interest rate related elements and stock lending fees
9  and so on. I have got all of that.
10 MR GOLDSMITH: Yes.
11 MR JUSTICE ANDREW BAKER: But am I right then to think that
12 the page 94 reference to stock lending interest of
13 557,158, if that is lifted from the statement, that will
14 be a figure that has been calculated using a daily mark
15 to market basis for doing the interest calculation that
16 did not match the trade confirmation if the trade
17 confirmation for the stock loan says "fixed cash pool"
18 and, going back to the point you and I did discuss
19 yesterday, the cash —— the principal cash collateral
20 amount as posted in the accounts was on day one the full
21 equity purchase and then from day two forwards the full
22 equity price minus the net dividend amount?
23 MR GOLDSMITH: So the oddity, my Lord, is that for the
24 principal amount of the cash collateral it is mark to
25 market, as we saw yesterday, and that is why at the end

9

1  of the day the cash collateral returned matches the
2  unwind equity price.
3  MR JUSTICE ANDREW BAKER: Yes.
4  MR GOLDSMITH: But the interest actually is not mark to
5  market. I didn't take Mr Shah to that yesterday because
6  he accepted ——
7  MR JUSTICE ANDREW BAKER: We did deal with that on Day 20MT,
8  and perhaps I'm forgetting that.
9  MR GOLDSMITH: Yes, we can look at it now, if you like.
10 MR JUSTICE ANDREW BAKER: Don't worry.
11 MR GOLDSMITH: But in essence the formula is original cash
12 collateral minus dividend compensation payment minus
13 accrued interest and then times the multiplier for the
14 interest rates, so that figure actually is not based on
15 the mark to market.
16 MR JUSTICE ANDREW BAKER: Although in that section of the
17 statement that one would get to by looking up page 94
18 you do in fact end up seeing lots of those individual
19 day by day, mark to market numbers ——
20 MR GOLDSMITH: Yes, yes.
21 MR JUSTICE ANDREW BAKER: —— and a few columns away you see
22 also a daily interest amount, that daily interest amount
23 figure is not in fact being calculated by reference to
24 those current mark to market daily value numbers.
25 MR GOLDSMITH: Exactly, my Lord.

10

1  MR JUSTICE ANDREW BAKER: That is the detail I had
2  forgotten. That is very helpful for me, thank you,
3  Mr Goldsmith.
4      My other point, it does relate to the same topic but
5  this time will give rise to a question for Mr Shah from
6  me before I then ask you to re—examine, Mr Jones. Can
7  we have back on screen the part of Mr Shah's evidence
8  that Mr Goldsmith used yesterday as a starting point for
9  some of his additional questions, so that is Day 20MT
10 and I am interested in page 137, please.
11 {day20MT/137:9}.
12     Do you remember, Mr Shah, Mr Goldsmith going back to
13 this passage of your evidence yesterday and then he had
14 various additional questions, all right?
15 A. Yes.
16 MR JUSTICE ANDREW BAKER: I am not by any means wanting to
17 go back over what you were asked about yesterday, if
18 there are questions in re—examination from Mr Jones
19 about that, that is a matter for him. It is a different
20 but quite specific point that I was reminded of that
21 I should perhaps have asked about back on Day 20MT, but
22 there it is.
23     Do you see at line 9 you say, and it is one of the
24 occasions where you say something of this type, that you
25 think what has happened is that there has been in effect

11

1  an error or you then call it "a bug" at the stage of
2  initially producing statements that had to be corrected
3  later, all right. That is what you say and I'm not
4  going to go back over that.
5      But what you do then say at line 12 when you call it
6  a bug, you say, and 13:
7      "Answer: ... I don't know if that was fixed later
8  on when the statements were automated ..."
9      Do you see that?
10 A. Yes, I see that.
11 MR JUSTICE ANDREW BAKER: When you talk there about an
12 automated process for producing statements, is that part
13 and parcel of what becomes Octave and Brokermesh and all
14 of that, or is that something different?
15 A. No, that's my understanding from 2015 when the trading
16 was automated, I believe that the statement production
17 was automated. I don't know for sure. That is what
18 I think should have happened.
19 MR JUSTICE ANDREW BAKER: Just in terms of what your
20 evidence was and what you meant by that answer, you had
21 in mind, you are saying, that documents equivalent to
22 the client—facing account statements that Mr Goldsmith
23 was going through with you once Brokermesh and Octave
24 were online were all produced as part and parcel of that
25 automated system?

12

```
 1   A.  Yes, TAS recorded all the historic data, so it would
 2       have been possible to produce an automated statement
 3       from using the data in TAS.
 4   MR JUSTICE ANDREW BAKER:  All right, thank you very much.
 5       I don't have anything else.  That clarifies for me what
 6       you meant by that particular reference to automation.
 7       Thank you.
 8           Yes, Mr Jones.
 9   MR JONES:  My Lord, I just want to introduce what I am going
10       to say, both for your Lordship's benefit and for
11       Mr Shah's.
12   MR JUSTICE ANDREW BAKER:  Yes, thank you.
13   MR JONES:  We have done some uploads into Opus yesterday for
14       the purposes of this re-examination.  There is some
15       issue that has arisen as to whether one or two or a few
16       of those documents have previously been disclosed.  I am
17       pretty confident that we will resolve that so your
18       Lordship is not going to be troubled by it.  If
19       I stumble from time to time, it is because I'm trying to
20       ensure that the teams behind me and to my left can
21       resolve that before I get to those, and therefore I may
22       pass over a subject, Mr Shah, and come back to it.
23           But if I do, that's the reason and I'm hoping your
24       Lordship will not be troubled with it and Mr Shah won't
25       be either.

                              13

 1   MR JUSTICE ANDREW BAKER:  All right, thank you.
 2                 Re-examination by MR JONES
 3   MR JONES:  Mr Shah, good morning.  I am going to try and
 4       give you and everyone else subject headings as we go
 5       through so you have a moment to understand the subject
 6       that I want to ask you about.
 7           The first one, please, is PwC's resignation.  And in
 8       order to ask you a few questions about that, could we
 9       have up on screen the transcript for {day17MT/81} and
10       {day17MT/82}.  If they could be put side by side, that
11       would be very helpful.
12           Whilst that is being done, Mr Shah, you were asked
13       questions about the resignation of PwC in relation to
14       the Broadgate Fund transaction and I just want to remind
15       you of two parts of that evidence.
16           The first part is on page 81 and would you read,
17       please, your answer between lines 14 and 18.  Just read
18       it to yourself.
19   A.  Okay.  Okay, I can see it now.
20   Q.  14 to 18.
21   A.  Okay, I have read that.
22   Q.  Thank you.  If you look on the right-hand page, that
23       should be page 82, would you read to yourself, the
24       question put to you and your answer, which you will find
25       between lines 9 and 20.  {day17MT/82:9}.

                              14

 1   A.  Okay.  Okay, I have read the question and the answer.
 2   Q.  Thank you very much.  I'm now going to ask you some
 3       questions in a moment about the rebuttal letter that you
 4       referred to in the last sentence of your answer.  So
 5       those two documents can go.  Could they be replaced,
 6       please, with {MTKC1/145/4}.
 7           So if we can go towards the top of page 4, this is
 8       an email sent from Guenther Grant-Klar to you and
 9       Mr Rajen Shah, setting out the draft text of the
10       proposed response to PwC.  If you want to see page 3,
11       just to remind yourself of that, please say so.  But do
12       you recall receiving that draft text?
13   A.  Yes, I do recall that draft.
14   Q.  Thank you.  If then, please, we could go to page
15       {MTKC1/145/1} of this document.  Thank you.  We can see
16       halfway down the page that Mr Rajen Shah provides
17       comments in two emails, the first of which is 7 December
18       at 19:38 and the second is a little later, at 19:54.  If
19       you would read those two emails to yourself, please.
20   A.  Okay.  Okay, I have finished that.
21   Q.  Thank you.  Would you read then at the top of the page
22       your response with your own comments, just to remind
23       yourself of what you said in 2010.
24   A.  Okay, thank you.  I have read that.
25   Q.  Thank you very much.  May we now go, please, new

                              15

 1       document, to {MTKC1/146/1}.  I want page 1 of it,
 2       please.  Thank you.  So in the middle of the page can
 3       you see an email from you to Mr Murphy at PwC, saying:
 4           "Please see attached letter and kindly confirm
 5       receipt."
 6   A.  Yes, I can see that.
 7   Q.  Do you recall sending him a letter -- that's the first
 8       question, do you recall doing that?
 9   A.  Yes, yes, I would call that the rebuttal letter.
10   Q.  And that's the rebuttal letter that you were referring
11       to in your answers to Mr Rabinowitz?
12   A.  Yes, that was the one that was drafted by
13       Guenther Grant-Klar on the previous email.
14   Q.  Now, we can't see the attachment there, but the
15       attachment is at MTKC1 --
16   MR JUSTICE ANDREW BAKER:  Just before we leave that
17       document, is that you in the top email, then, forwarding
18       that to Mr Markowitz, one of the Argre principals and
19       attaching the letter as actually sent to PwC?
20   A.  Yes, that would be that, and the context is that
21       Richard Markowitz was one of the investors in the fund.
22   MR JUSTICE ANDREW BAKER:  Yes.  Thank you.
23   MR JONES:  I am grateful.
24   MR JUSTICE ANDREW BAKER:  So the reference you are going to,
25       giving it a trial reference, is this PwC underlying

                              16
```