# Exhibit 9

| | |
|---|---|
| **From:** | Ben-Jacob, Michael |
| **Sent:** | Friday, December 12, 2014 12:32 PM |
| **To:** | 'Richard Markowitz'; Wells, Peter |
| **Cc:** | 'John H. van Merkensteijn, III'; 'Robert Klugman' |
| **Subject:** | RE: Danish Securities Law Question |
| **Attachments:** | Standard Form_Major Shareholder_Notification.pdf; Major Shareholder Notification Process - Denmark (FSA).pptx |

All,

Further to our discussions on this, I have had a lengthy follow up conversation with the Danish lawyer and set out the summary of relevant points below. Apologies in advance for the length of the email, but I thought you would want to be fully informed.

Summary/Conclusion

Whether the group would be said to be acting in concert, which if found would require aggregation of the trading done in the various plans and result in Danish FSA reporting requirements, is very facts-and-circumstances specific and there is very little authority on the point. A few things are clear: the burden of proof to show that a group is acting in concert is on the government, not the traders. Also, it is equally clear that parties are permitted to discuss trading strategies, investment opportunities, whom they intend to vote for as a director of a company, and the like—which all happens on trading floors every day. The concept of acting in concert leading to a reporting requirement is meant to address where parties take steps to strategically impact the purposes or direction of the company (which is not our case), so that the public can be informed of such tactics. In a questionable case, where the parties can reasonably argue that a failure to file was merely "innocent mistake" there have rarely been fines imposed at all and, where so, the fines might be in the $5k to $50k range per trader. Importantly, while some have argued that the fines should be some percentage of the trades, the government has never taken that view. Finally, the Danish FSA has no authority beyond its borders, has no authority to criminally prosecute, and they are not a party to any treaties that would permit them to call upon the assistance of the US. So if, for example, an investigation were launched and you ignored them and a default judgment were rendered they would need to try to enforce the judgment in the US as would any other judgment holder—all very unlikely to happen.

Taking these practicalities together with the fact that in your case a reasonable, although not unassailable, argument can be made that you are not acting in concert my own conclusion would be not to file.

Discussion

Over the course of our call, Claus and I walked through the following scenerios:

1. If an individual has two pension plans and each has a separate trading account, but the pension plans are owned and controlled by the same individual, would the two accounts be aggregated for reporting purposes?
2. If two or more individuals have such pension plans each with a separate trading account and the individuals share information, some (but not all) resources and expenses, and exercise separate independent decision making as to whether to trade, etc., would those two trading accounts be aggregated for reporting purposes?
3. If those two pension plans enter into two partnerships which partnerships each hold a trading account, would those two trading accounts be aggregated?

1

4. If the partnership 1 appoints pension plan 1 as agent and legal title holder of an account, and partnership 2 appoints pension plan 2 as legal title holder of the account, but the two partnerships have the pension plans as common partners and share some resources as described, would the accounts be aggregated?

Claus concluded that in scenerio 1 there is a very high liklihood that the plan trading would be aggregated. But even there under the right facts Claus felt it was possible to avoid the acting in concert conclusion if, for example, it could be shown that the two plans were invested by two separate independent managers who did not communicate, etc. In any case, as you can imagine, in each successive scenerio the are arguments on either side. Taking the actual facts of our case, it was noted in our conversation that it is very helpful that the parties have no obligation to trade together, don't share all resources, and in fact exercise independent judgement was to whether to enter a round of trading. But, as discussed above, whether these facts would outweigh the facts that there is a formal structure in place, the parties often do trade together, they rely on the same investment advisors, custodians, etc., cannot be said for certain.

### Additional Rules that You Should Note

1. A holder of shares in a Danish publicly traded company is required to report to the public company and the Danish FSA immediately (the day of trading) upon acquiring 5 % or more of the total share capital or voting rights in the public company. The same reporting requirement apply if changes are made to the number of shares hold and crossing (up or down) the threshold levels: 5 %, 10 %, 15 %, 20 %, 25 %, 1/3, 50 %, 2/3 or 90 %. Derivatives such as call-options could be included in determining if a threshold is met. The notification rules also apply on winding down a portfolio.
2. The reporting to the Danish FSA should consist of a filled out Standard Form set out as an attachment to the relevant Executive Order issued pursuant to the Danish Securities Trading Act. The message of crossing a threshold addressed to the public Danish company should include (i) a short specification of the situation (e.g. number of shares, direct or indirect ownership etc.) (ii) the date of crossing the threshold, (iii) the identity of the shareholder. The reporting must be in Danish or English and needs to done on-line. The procedure is set out in the attached brief power point presentation and the relevant form is also attached.
3. Effective 15 December 2014 an amendment to the Danish Companies Act will come into force requiring threshold filings in both listed and unlisted companies to be made to the database run by the Danish Business Authority with effect no later than 15 June 2015.
4. The Danish FSA generally considers trusts to have a separate legal personality for purposes of requiring them to report and thus the trust must report.
5. There are no other reporting requirements than those following from the Danish Trading in Securities Act and the Danish Companies Act (once phased in).
6. In defining whether parties are acting in concert, the standard answer is that that is when they are parties to a shareholders' agreement obliging them to vote in a particular manner on a number of issues – in the words of the relevant Executive Order, "..entered into an agreement obliging the parties to conduct a long term policy towards the management of the company in question through use of their voting rights" However, the FSA has on numerous occasions made it clear that such "agreement" can be quite informal and indeed it seems that if parties are somehow closely connected through business association in other ways, there is a strong presumption that such parties are acting in concert. There is one example dating 11 years back where the reporting authority was the Copenhagen Stock Exchange and not the FSA and where a sister-in-law bought shares in a company that her sister's husband was a major shareholder in and the stock exchange said that they had no indication of concerted trading. The purchaser was indeed very wealthy and a well-known investor in shipping companies, but the FSA was heavily criticised for the conclusion at the time and Claus wonders whether the FSA would come to the same conclusion today.
7. Investment managers acting for several funds will normally report the aggregate of shares in the funds' ownership.

Let me know if you would like to discuss further.

Regards.

CONFIDENTIAL                                                                                                                                                         WH_MDL_00317342

mbj


\*\*\*

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michael Ben-Jacob
KAYE SCHOLER LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8310 | F: +1 212.836.6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

**From:** Ben-Jacob, Michael
**Sent:** Wednesday, December 10, 2014 7:16 AM
**To:** 'Richard Markowitz'; Wells, Peter
**Cc:** John H. van Merkensteijn, III; Robert Klugman
**Subject:** RE: Danish Securities Law Question

All,

Just a quick update: Claus and I have had some difficulty scheduling a follow up call, although I was able to send him an email with more details and which he tells me he has considered and can speak to in more detail. We are scheduled to speak on Friday at 10am and I will provide you a further update at that time.

Regards.

mbj



Michael Ben-Jacob
Kaye Scholer LLP
250 West 55th Street | New York, New York 10019-9710
T: (212) 836-8310 | F: (212) 836-6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

PLEASE NOTE OUR NEW ADDRESS: Kaye Scholer's New York office is now located at 250 West 55th Street, New York, NY 10019-9710. Our phone and fax numbers remain the same.

Any U.S. federal tax advice contained in this message (including any attachments) may not be able to be used for purposes of avoiding tax-related penalties imposed under U.S. federal tax laws. This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (212) 836-8310 and delete the message, along with any attachments, from your computer. Thank you.

**From:** Richard Markowitz [mailto:rmarkowitz@argremgt.com]
**Sent:** Tuesday, December 02, 2014 11:40 AM
**To:** Ben-Jacob, Michael; Wells, Peter
**Cc:** John H. van Merkensteijn, III; Robert Klugman
**Subject:** Re: Danish Securities Law Question

CONFIDENTIAL                                                                                                                              WH_MDL_00317343

Thank you for the summary. I suppose the real question is to make sure the Plans are somehow not acting in concert so that we would not have to aggregate across plans (with different beneficiaries).

Perhaps we should talk about this over the phone.

Richard

Richard Markowitz
Managing Director
Argre Management LLC
1345 Avenue of the Americas
27th Floor
New York, NY 10105

Office:
(212) 231-3923
Main:
(212) 247-2600
Fax:
(212) 247-2753
Mobile:
(917) 848-5675

RMarkowitz@Argremgt.com

---

**From:** <Ben-Jacob>, Michael Ben-Jacob <michael.ben-jacob@kayescholer.com>
**Date:** Tuesday, December 2, 2014 at 11:21 AM
**To:** Richard Markowitz <rmarkowitz@argremgt.com>, Peter Wells <peter.wells@kayescholer.com>
**Cc:** "John Van Merkensteijn, III" <JHVM@Argremgt.com>, Robert Klugman <rklugman@storcapital.com>
**Subject:** RE: Danish Securities Law Question

All,

I have spoken with Claus Bennetsen of the Horten law firm in Copenhagen who came highly recommended by Simon Firth of our London office. Claus was clearly very knowledgeable in the area. You can see his bio at http://en.horten.dk/People/Claus-Bennetsen

Claus explained that unless you meet the 5% ownership threshold there are no reporting requirements of any sort. There are additional reporting requirements at the 10% and 25% thresholds but we did not explore those as I did not think they would be relevant. Let me know if you think otherwise.

As for determining whether the 5% threshold is met, under current law one looks only to legal title ownership and not to beneficial ownership. In this context, one looks to a particular moment in time. So, for example, in the first instance they would look to the plan as the possible reporting entity because the plan holds legal title to the trading account, even though the plan is operating as agent for the general partnership. Moreover, one would look to the total shares held by the plan at a point in time and not aggregate, for example, the number of shares held by a plan over the course of a year, month or other period. One would, however, aggregate the number of shares held by a particular plan in different accounts.

There are related party rules that would aggregate the total holdings to determine if the threshold is met if, for example, a group of plans were deemed to be acting in concert. I did not delve into the particulars of the instant trading strategy or structures. But we may need to explore this further if, when we aggregate among your plans we reach the 5%

4

threshold . I add the caveat that I suppose in the extreme one could include the trading being done by Matt, Jerome and Luke—but I think that would be a bit far afield under the current circumstances.

In summary, if among your various plans there is no point in time when you own 5% or more then we don't need to go any further. If because of aggregation that may apply if you are deemed to be acting in concert you reach or exceed the 5% threshold then we need to explore further what constitutes acting in concert.

All of this stands to change, however. Claus indicates that a new body of legislation comes into effect on December 15th and which will be phased in over the next six months. Under this legislation it appears that the Danish FSA may look to beneficial ownership for determining reporting thresholds. Whether this interpretation of the new rules is correct is an open question and practitioners are awaiting further guidance. I have asked Clause to keep us abreast of developments. Again, even here if in a worst case we aggregate all the trading because of common beneficial ownership and the 5% threshold is not met there would be no reporting requirement.

If you are subject to reporting then the reporting must be done "immediately". This word is strictly interpreted under some precedents to mean that a report must be filed the same trading day. The report is filed in two places: with the Danish FSA and with the company. As to the former there is a specific form, which is available in English and which Claus is going to forward to me, and which for things like a description of the transaction, number of shares involved, name of owner, date of trading, and the like. No doubt we would have many questions as to how to appropriate complete this form if required. As to informing the company, there is no prescribe form or format and I am told that the practice is to send an email to the company with similar information.

Please let me know your thoughts.

mbj


Michael Ben-Jacob
Kaye Scholer LLP
250 West 55th Street | New York, New York 10019-9710
T: (212) 836-8310 | F: (212) 836-6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

PLEASE NOTE OUR NEW ADDRESS: Kaye Scholer's New York office is now located at 250 West 55th Street, New York, NY 10019-9710. Our phone and fax numbers remain the same.


Any U.S. federal tax advice contained in this message (including any attachments) may not be able to be used for purposes of avoiding tax-related penalties imposed under U.S. federal tax laws. This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (212) 836-8310 and delete the message, along with any attachments, from your computer. Thank you.

**From:** Richard Markowitz [mailto:rmarkowitz@argremgt.com]
**Sent:** Monday, November 24, 2014 11:59 AM
**To:** Wells, Peter; Ben-Jacob, Michael
**Cc:** John H. van Merkensteijn, III; Robert Klugman
**Subject:** Danish Securities Law Question

Michael and Peter:

We would like your help in getting answers to some questions regarding Danish securities laws.

CONFIDENTIAL                                                                                                                              WH_MDL_00317345

Specifically, what are the disclosure/reporting requirements for a holder of shares in a public company in Denmark?

> Is it 5% of outstanding shares (or some other measurement)?  (This is what I learned from reading a translation of the Danish Securities Trading Act and other on line summaries.)
> Is it only the Danish FSA that sets the requirements?
> Given, that in our cases, a trust is purchasing the shares, is it based on the trustee?  The beneficiary?  Both?  Is there a notion of related parties?
> Any other specific requirements that we might not be aware of?

We recognize that you may need to reach out to your securities law colleagues (especially in London) who may then need to speak with a local firm in Denmark that they have a relationship with.  But we do want to get these answers as soon as possible.

Thanks, and please call if you have any questions.

Richard

_____

Richard Markowitz
Argre Management LLC
40 West 57th Street
20th Floor
New York, NY 10019

Tel:(212) 247-2600
Fax:(212) 247-2753
Mobile:(917) 848-5675

CONFIDENTIAL