# Exhibit 4
# Part 2

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                - 8 -                                June 20, 2014
Richard Markowitz
Adam LaRosa

As to the question of whether the performance of services for the Michelle Plan results in the service provider being a disqualified person, while there is no direct guidance on this issue, it is possible to make the argument that a service provider such as Solo does not become a disqualified person until the agreements to provide services are entered into and, therefore, the initial transaction between the plan and such service provider would not be prohibited. However, the Department of Labor ("DOL") could take the position that an exemption is necessary for even the initial transaction to avoid being a prohibited transaction. In addition, if the Michelle Plan were to enter into identical or nearly identical transactions with Solo, the DOL could well view Solo as a disqualified person upon it entering into the second (and such subsequent) such transaction, even if it would not have challenged the first. In this event, Solo (and any other service provider) would need to show that they had met the requirements for an exemption for their activities with respect to the Michelle Plan.

### D. <u>Exemptions</u>

The Code provides for exemptions to the prohibited transaction rules.[9] Section 4975(d)(2) of the Code provides an exemption, called the "Service Provider Exemption", from the prohibited transaction provisions of Section 4975(c) for "any contract, or reasonable arrangement, made with a disqualified person for other services necessary for the ... operation of

---

[9] Section 4975(d)(2) also provides an exemption for transactions for certain of the prohibited transactions for a disqualified person other than a fiduciary (or an affiliate) who has or exercises any discretionary authority or control with respect to the investment of the plan assets involved in the transaction or renders investment advice with respect to the assets, solely by reason of providing services to the plan but only if the plan receives no less than, and pays no more than, adequate consideration. It is not clear how the concept of "adequate" consideration applies to loans. In addition, this exemption does not exempt prohibited transactions under Section 4975(c)(1)(D), (E) or (F).

Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER

WH_MDL_00140673

DX3956, page 9 of 17

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                  - 9 -                                  June 20, 2014
Richard Markowitz
Adam LaRosa

the plan, if not more than reasonable compensation is paid therefor".[10] The contract or arrangement also must permit termination by the plan without penalty on reasonably short notice under the circumstances to prevent the plan from being locked into an arrangement that has become disadvantageous.

In addition, Section 4975(d)(b) of the Code provides an exemption for the receipt by a disqualified person of any reasonable compensation for services rendered or the reimbursement of expenses actually and properly incurred in the performance of duties with the plan (so long as the person is not also receiving full time pay by the employer or employee organization maintaining the plan). As with the Service Provider Exemption, the compensation must be "reasonable."

The Treasury Regulations provide that, generally, whether compensation is reasonable depends on the particular facts and circumstances of each case[11]. However, any compensation which would be considered excessive under Section 1.162-7 of the Treasury Regulations will not be reasonable for purposes of these exemptions.[12] Therefore, the burden of proving that no prohibited transaction has occurred would be on the service provider, as well as on the fiduciary of the Plan involved. The reasonableness of any fee will ultimately be a facts and circumstances question.

---

[10] Certain of the exemptions under Section 4975, including this exemption do not apply to certain transactions in which a plan lends money or pays compensation or buys or sells from or to an owner-employer or certain parties related to an owner employee. We understand that these facts are not present in this case.
[11] Treasury Regulation 54.4975-6(e)(2).
[12] Treasury Regulation 54.4975-6(e)(6).

Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00140674

DX3956, page 10 of 17

KAYE SCHOLER LLP

John H. van Merkensteijn, III  
Matthew R. Stein  
Jerome Lhote                          - 10 -                         June 20, 2014  
Richard Markowitz  
Adam LaRosa

As discussed herein, the arrangement between the Michelle Plan and Solo provides for payment to Solo of 66% of the gross amount payable from the transactions; from this amount Solo is required to pay significant expenses associated with the transaction which expenses are in addition to any fees paid by the Michelle Plan. If this 66% were to be viewed as a fee for services, or compensation, to Solo, it would appear to be large compared to many investment fee relationships. However, the 66% represents the gross amount payable to Solo so that after the payment of its fees to third parties (including trading commissions, legal fees, brokerage fees, accounting fees, reclaim services, custodial service fees, leverage providing fees and guaranty fees paid by Solo), Solo's net "compensation" was less than the 66% and perhaps considerably less.

Given the size of the payments to Solo in this matter, we would expect the DOL to closely scrutinize the fee by looking at the fees charged for similar services, if any, as well as the time and effort expended by Solo. We would also expect that the DOL would look at how much of the amount is actually compensation to Solo and how much is payment to third party providers, and to what extent the payment to third party providers is reasonable compensation. In this regard, we understand that Solo and other unrelated providers have and do provide similar arrangements to other investors (both plans and non-plan investors) under arrangements in which the investors share of the net proceeds is as low as 10%[13]. We also understand from you that the trustees of the Michelle Plan were not able to find a provider which would provide similar investment services at a lower cost. This indicates that the amounts paid to Solo are consistent

---

[13] Because these are private contractual relationships, the details of these transactions are not available to us.  
Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00140675

DX3956, page 11 of 17

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                          - 11 -                        June 20, 2014
Richard Markowitz
Adam LaRosa

with or less than those charged other investors. In addition, many hedge fund managers charge a fee of 20% or more of profits (we understand that some managers charge a fee of up to 50% of profits), which indicates that market demands often result in arrangements for fees which appear large but which are deemed by investors as appropriate to attempt to obtain a desired return.[14]

In addition, we would expect that the analysis would consider how much of a return the Michelle Plan received, compared to that of Solo and other service providers. We understand that the return to the Michelle Plan has been very favorable even after the payments to Solo.

While the documentation of the transaction cannot be ignored, it should also be noted that the intent of the parties was that the arrangement was in the nature of a partnership in which each partner would receive a portion of the gross amount, with Solo bearing all of the costs. In this context, the provision of a larger allocation to Solo reflects the agreement of the parties that Solo was essential to the transactions, that the transactions might otherwise not have been possible, and that Solo was incurring large expenses to effectuate the transactions.

The Treasury Regulations provide that the Service Provider Exemption does not apply to "self dealing transactions by fiduciaries" – that is, fiduciaries dealing with the income or assets of a plan in their own interest or for their own account or receiving consideration for their own personal account from any person dealing with a plan. We understand that none of the trustees of the Michelle Plan are receiving or have received any direct or indirect benefit or gain from these transactions.

---

[14] These fees are often part of a complex fee structure which often results in lower fees if certain hurdles are not met.
Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00140676

DX3956, page 12 of 17

KAYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                           - 12 -                        June 20, 2014
Richard Markowitz
Adam LaRosa

### E. Application to Service Providers

It is possible that Solo could be a "fiduciary" (described in Appendix A) with respect to the Michelle Plan. If so, the DOL could take the position that the Service Provider Exemption does not apply if Solo uses its authority, control or responsibility to cause the plan to pay additional fees to it or otherwise pay fees which may benefit Solo or influence its judgment as a fiduciary. This could be the case, for example, if Solo could authorize additional, unnecessary trades which resulted in increased fees to it. In this regard, you have informed us that Solo has no authority over the fees, and no authority to authorize additional fees or additional trades that could result in additional fees, but that all such trades are authorized on behalf of the Plans by Mr. LaRosa and that Solo merely effectuates those orders.

As described in this memorandum, Mr. LaRosa has performed services for the Michelle Plan, and therefore is a service provider and is likely also a fiduciary. We understand that Mr. LaRosa is also a disqualified person because of his ownership of a profits interest in Argre.[15] The compensation paid to him will need to qualify under the Service Provider Exemption (or other exemption) and so must be "reasonable". While this is a question of fact, we understand that substantial work is involved on Mr. LaRosa's part and so the fee of $5,000 would not seem unreasonably large. We also understand from you that Mr. LaRosa does not have any authority to cause this fee to be paid or to increase the amount of the fee.

---

[15] Mr. LaRosa would also appear to be a disqualified person under Section 4975(e)(2)(I) of the Code because he is a 10% or more partner in Argre, which is an entity in which 50% or more of the partnership interests are held by trustees of the Michelle Plan.

Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER

WH_MDL_00140677

...

**KAYE SCHOLER LLP**

| John H. van Merkensteijn, III | | |
|---|---|---|
| Matthew R. Stein | | |
| Jerome Lhote | - 13 - | June 20, 2014 |
| Richard Markowitz | | |
| Adam LaRosa | | |

Payment for the services performed by the third party service provider who files the tax reclaim form or other providers who Solo may pay to perform related services could also be a prohibited transaction unless it meets the Service Provider Exemption (or other exemption). This compensation seems less burdensome on the Michelle Plan than the fees paid to Solo and, for this reason, we believe less likely to be challenged by the DOL, although as noted in the Facts, Solo does not break out the amount of those fees and disclose them to investors.

### F. <u>Extension of Credit</u>

As noted above, an extension of credit between a plan and a disqualified person constitutes a prohibited transaction. The DOL could look at Solo's guaranty of the trades as an extension of credit to the Michelle Plan rather than a service in connection with this investment or as an advance to cover direct expenses which are to be repaid, and take the position that the extension of credit is not exempted by the Service Provider Exemption. It could be argued that the guaranty is a necessary service in order to enter into the investment, and that the Service Provider Exemption should apply to exempt the guaranty, if its requirements are met. This would give Solo the burden of proving that the fees were reasonable and necessary. Again, even if the DOL did not view Solo as a disqualified person in the initial transaction between it and the Michelle Plan, it could take the position that Solo became a disqualified person when later transactions were consummated.

The DOL has issued an exemption for certain securities lending transactions but those are not discussed in this memorandum since it is our understanding that Solo will not receive

Michelle

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                           - 14 -                           June 20, 2014
Richard Markowitz
Adam LaRosa

compensation for securities lending services that will be entered into with an unrelated third party which is not a disqualified person.

### G. Other Issues

The Facts section in this memorandum is intended to provide the factual basis for other memorandum, and so all facts may not be required for the analysis hereunder. This memorandum does not address other issues other than those specifically addressed herein.

Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER

WH_MDL_00140679

DX3956, page 15 of 17

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                             - 15 -                             June 20, 2014
Richard Markowitz
Adam LaRosa

## Appendix A - Terms

This Appendix A briefly describes certain terms used in this memorandum.[16]

**Definition of a Prohibited Transaction.** A prohibited transaction includes (i) the sale or exchange of any property between, or the lending of money or any other extension of credit between, or the furnishing of goods or services between, a plan and a disqualified person (Section 4975(c)(1)(A), (B) and (C)), (ii) a transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan (Section 4975(c)(1)(D)), (iii) the act by a fiduciary whereby he deals with the plan income or assets in his own interest or for his own account (Section 4975(c)(1)(E)), or (iv) or the receipt of any consideration for his own personal account by a disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan (Section 4975(c)(1)(F)).

**Definition of a Disqualified Person.** Section 4975(e)(2) defines a disqualified person to include: (A) a fiduciary; (B) a person providing services to the plan; (C) an employer any of whose employees are covered by the plan; (D) an employee organization any of whose members are covered by the plan; (E) an owner, direct or indirect, of 50% or more of the combined voting power of all classes of stock entitled to vote or total value of shares of all classes of stock of a corporation, or of the capital interest or profits interest of a partnership or of the beneficial interest of a trust or unincorporated enterprise which is an employer or employee organization described in (C) or (D); (F) a member of the family (as defined) of any individual described in (A), (B), (C) or (E); (G) a corporation, partnership or trust or estate of which (or in which), 50%

---

[16] These terms are defined in Section 4975 of the Code and this discussion is subject to those definitions.
Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00140680

DX3956, page 16 of 17

**KAYE SCHOLER** LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                - 16 -                              June 20, 2014
Richard Markowitz
Adam LaRosa

or more of the combined voting power of all classes of stock entitled to vote or total values of shares of all classes of stock of a corporation, or of the capital interest or profits interest of a partnership or of the beneficial interest of a trust or estate, is owned directly or indirectly or held by persons described in (A), (B), (C), (D) or (E); (H) an officer, director (or person having similar powers or responsibilities), a 10% or more shareholder, or a highly compensated person (earning 10% or more of the yearly wages of an employer) of a person described in (C), (D), (E) or (G); or (I) a 10% or more (in capital or profits) partner or joint venturer of a person described in paragraphs (C), (D), (E) or (G).

**Definition of Fiduciary.** Section 4975(e)(3) defines "fiduciary" as any person who (i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of the plan or has any authority or responsibility to do so, or (iii) has any discretionary authority or discretionary responsibility in the plan administration.

\* \* \* \* \*

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER

WH_MDL_00140681

DX3956, page 17 of 17